UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEPHEN W. HIGGINS and
RHONDA S. HIGGINS,

          Plaintiffs,

vs.                                               Case No. 8:06-CV-1928-T-27MSS

DAVID GEE, in his official capacity
as Sheriff of Hillsborough County, Florida,
and REGINALD DAVIS, individually,

          Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Defendant Reginald Davis's Renewed Motion to Dismiss for Qualified Immunity and Motion to Dismiss based on Fla. Stat. § 30.07 (Dkt. 70), to which Plaintiffs have responded in opposition (Dkt. 86).

In this action, brought pursuant to 42 U.S.C. § 1983 and state law, Plaintiff Stephen Higgins ("Plaintiff") alleges that he was subject to an unlawful search and an unlawful arrest for grand theft, stemming from a subordinate's false accusations that he stole tools from his employer.[1] Defendant Reginald Davis ("Davis"), a deputy with the Hillsborough County Sheriff's Office ("HSCO"), is alleged to have arrested Plaintiff, without a warrant or probable cause, and to have illegally coerced Plaintiff's consent to search his trailer. In the instant motion, Davis seeks qualified immunity on Plaintiff's Section 1983 claims and argues that HCSO is liable for the state law tort claims for unlawful search and false imprisonment pursuant to Fla. Stat. § 30.07.

---

[1] Plaintiff Rhonda Higgins is Stephen Higgins' wife. (Am. Compl. ¶ 7). She brings a loss of consortium claim (Count V).

By contemporaneous Order, the Court has granted in part and denied in part the Amended Motion for Summary Judgment filed by Defendant David Gee, in his official capacity as Sheriff of Hillsborough County, (Dkt. 34), which contains a full recitation of the relevant facts. Because Defendant Davis has filed a motion to dismiss, however, this motion is evaluated solely on the relevant allegations of the Amended Complaint (Dkt. 63), as set forth below. In summary, the Court finds: (1) Davis is not entitled to qualified immunity for the warrantless search of Plaintiff's trailer based on the allegations of the Amended Complaint; (2) Davis has not argued that he is entitled to qualified immunity for Plaintiff's warrantless arrest; (3) and the alternative allegations in Counts I and II properly allege Davis is individually liable for the state law claims for unlawful search and false imprisonment.

*Standard*

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although a complaint need not include detailed factual allegations, it must contain sufficient factual allegations, which, when taken as true, "raise a right to relief above the speculative level." *Id.* at 1964-65. Moreover, the Eleventh Circuit employs a heightened pleading standard to Section 1983 claims against individuals entitled to raise qualified immunity as a defense, "requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim." *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998); *Swann v. S. Health Partners, Inc.*, 388 F.3d 834, 838 (11th Cir. 2004).

2

## *Discussion*

### A.   *42 U.S.C. § 1983 (Count III)*

Plaintiff alleges that Davis violated his Fourth Amendment right to be free from "unreasonable searches and seizures," in effecting his arrest without probable cause and by engaging in a warrantless, non-consensual search of his residence. *See* U.S. Const. amend. IV. In the instant motion, Defendant Davis contends that he possesses qualified immunity for these events. "Qualified immunity protects government officials performing discretionary functions from individual liability as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "The purpose of this immunity is to allow governmental officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Id.* (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir.2002)).

Plaintiff does not dispute that Defendant was acting in the scope of his discretionary authority in carrying out the investigation and arrest of Plaintiff. (Dkt. 86 at 6). Accordingly, Plaintiff bears the burden of overcoming the defense of qualified immunity. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007). To determine whether qualified immunity applies, the court resolves a threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" *Scott v. Harris,* --- U.S. ----, 127 S.Ct. 1769, 1774 (2007) (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). "If, and only if, the court finds a violation of a constitutional right," does the court ask whether the right was clearly

established at the time of the violation. *Id.*

### 1. *Unreasonable Search*

a.   *Constitutional violation*

It is well-established that a warrantless search conducted pursuant to voluntary consent is constitutional. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222 (1973). Whether consent is voluntary, and not the result of coercion, express or implied, is assessed pursuant to the totality of the circumstances. *Id.* at 248. Relevant factors include "whether the person is in custody, the existence of coercion, the person's awareness of his right to refuse consent, the person's education and intelligence, and whether person believes that incriminating evidence will be found." *Johnston v. Tampa Sports Auth.,* 490 F.3d 820, 825 (11th Cir. 2007) (citing *United States v. Blake,* 888 F.2d 795, 798 (11th Cir.1989)). "[T]o be considered voluntary, consent 'must be the product of an essentially free and unconstrained choice.'" *United States v. Zapata,* 180 F.3d 1237, 1241 (11th Cir.1999) (quoting *United States v. Garcia,* 890 F.2d 355, 360 (11th Cir.1989)).

Plaintiff's Amended Complaint alleges, in relevant part:

25.   Goff . . . demanded to "search his residence" which was refused by Higgins on several occasions.

29.   The Higgins, including S. Higgins, repeatedly refused HCSO's request to search his trailer without a warrant.

30.   S. Higgins was handcuffed and the deputies advised him that Detective Davis was "coming out." S. Higgins got the "feeling that they were calling Davis because they knew Davis would bully me and do the job."

31.   Davis arrived on the scene and informed S. Higgins that he was under arrest no matter what.

33.   S. Higgins has testified under oath that Davis stated "I'm going to look in your house . . . . I'm going to look in your house either way . . . . You're

going to get arrested. You're going to drive away in that car, and then I'm going to smash everything you own."

34. S. Higgins further testified that he was getting nervous, that Davis was making these statements, getting into his face and "I just finally felt like I was going to either get sick or something, because he was like intimidating. . . . so I backed up and he said "I'm gonna go in your house one way or the other. If you let me in, I'm going to be gentle. I won't break nothing. Everything will be the way you left it. But if you don't, I'm smashing everything."

35. S. Higgins did not voluntarily consent to a search.

Plaintiff alleges that Deputy Goff reported that Davis made statements similar to: "You are under arrest. You will not be able to go into that trailer until after we secure a search warrant. Then we are going to enjoy breaking a door or any means necessary. Once inside, we are going to f--- your sh-t up or you can let us search it." (Dkt. 63, ¶ 39). Plaintiff alleges that Deputy Arnold reported that Davis said "After getting the search warrant, that he would break in the suspect's door and tear his residence apart and the suspect would still be under arrest." (Dkt. 63, ¶ 41). Plaintiff also alleges that Corporal Hassell wrote a memorandum to Lt. Spiller to "express his concern regarding the method in which the consent to search was obtained." (Dkt. 63, ¶ 36).

Based on the foregoing, Plaintiff's "consent" cannot be said to have been voluntary. This conclusion is not dictated by the fact that Plaintiff was in custody and handcuffed while Davis was attempting to his elicit his consent. "The fact of custody does not necessarily vitiate the defendant's valid consent to a search. Because '[i]n any arrest there is present a degree of duress, . . . [t]he question is whether the officers used coercive tactics or took unlawful advantage of the arrest situation to obtain consent.'" *United States v. Smith*, 199 F. App'x 759, 763 (11th Cir. 2006) (quoting *United States v. Jones*, 475 F.2d 723, 730 (5th Cir.1973)) (internal citations omitted); *see also United States v. Villanueva-Fabela*, 202 F. App'x 421, 427(11th Cir. 2006) (fact that defendant

was in handcuffs does not, by itself, make consent involuntary). Nor is a person's consent to search vitiated because officers, as Davis allegedly did here, told him that they could attempt to obtain a search warrant if he did not consent to the search. *See e.g., United States v. Garcia,* 890 F.2d 355, 361 (11th Cir.1989) ("agents merely stated that they would not accept Garcia's conditional consent, and that if he refused to consent to a full search, the agents would attempt to obtain a warrant.").

What pushes this case over the line is the fact that Plaintiff repeatedly refused to consent to a search,[2] coupled with Davis's threats to "smash everything you own," or "tear his place apart," or "f--- your sh-t up" if Plaintiff did not consent to a search. On these facts, Plaintiff's consent was not the product of "an essentially free and unconstrained choice." *See United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.,* 363 F.3d 1099, 1102-03 (11th Cir. 2004) (police refused defendant's request to speak with attorney, to make telephone call, and to get more clothes because defendant was in only a towel, and told defendant that if they had to wait for a warrant they would "tear his house apart and arrest his girlfriend").[3] The Court also finds that Plaintiff's eventual retraction of his previous refusals to consent weighs in favor of finding that Plaintiff's ultimate acquiescence was the product of Davis's coercive tactics, not a voluntary choice. Accordingly, the Court finds that Plaintiff has sustained his burden to show that a constitutional

---

[2] Given the allegation in Paragraph 30 that Plaintiff believed the deputies called Davis in "to do the job," and taking the inferences in the light most favorable to Plaintiff, the Court infers that Davis knew of Plaintiff's repeated refusals to search his residence.

[3] In addition, when Defendant signed the consent form, the officers stopped him from signing in the blank refusing to waive his rights and he signed in another box. *Cf. United States v. Long,* 866 F.2d 402, 404-05 (11th Cir. 1989) (defendant led agents to area where money was buried, and even if agents stated that they could come back and "dig the place up," defendant "was free to force the agents to obtain a search warrant and, if at that time, he did not want 'his whole place dug up,' [he] could have cooperated."). Taken in context, the agents' statement was a statement of fact: they would have to dig up the defendant's yard, even if they obtained a search warrant and he did not tell them where the money was buried. Thus, the officer's comments do not compare to Davis's alleged threat to gratuitously destroy Plaintiffs' residence.

violation occurred, on the facts alleged in the Amended Complaint.

b.   *Clearly established law*

Davis may still be protected by qualified immunity to the extent that Plaintiff fails to carry his burden to show that the right to be free from excessive force under these circumstances was clearly established at the time of the incident. The Eleventh Circuit has held that conduct may be clearly established as illegal in three ways: (1) through explicit statutory or constitutional statements; (2) through authoritative judicial decisions that "establish broad principles of law that are clearly applicable in a variety of factual contexts going beyond the particular circumstances of the decision that establishes the principle;" and (3) most commonly, through case law that finds the conduct unlawful in materially similar factual circumstances. *Griffin Indus., Inc.*, 496 F.3d at 1209 (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1350-52 (11th Cir. 2002)). As the foregoing indicates, there need not be a case "on all fours" with the challenged conduct, if there is a broad principle of law that applies with "obvious clarity." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1277 (11th Cir. 2004); *Powell v. Barrett*, 496 F.3d 1288, 1315-16 (11th Cir. 2007). The pertinent question is whether the controlling law at the time of the events in question gave the defendant fair and clear warning that the alleged conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *Vinyard*, 311 F.3d at 1350. The only courts relevant to the determination of clearly established law are the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the Florida Supreme Court. *See Jenkins v. Talledega Bd. of Educ.*, 115 F.3d 821, 827 n. 4 (11th Cir.1997) (en banc).

The Court is mindful that the Eleventh Circuit has observed that the difficulty in demonstrating clearly established law is "especially true when the inquiry is as heavily fact-

7

dependent as the 'voluntariness' inquiry." ' *See Hudson v. Hall,* 231 F.3d 1289, 1297-98 (11th Cir. 2000) (finding qualified immunity where officer stated, "if you don't want to be searched, then start walking" and noting that cases look at the totality of the circumstances). Nonetheless, the Court concludes that Davis's conduct was clearly established as unconstitutional at the time of the incident, by virtue of at least one case establishing a broad principle governing warrantless, consensual searches, that applies with the requisite clarity to these facts.[4] As the Eleventh Circuit held in *United States v. Zapata,* "[t]o be considered voluntary, consent 'must be the product of an essentially free and unconstrained choice.'" *Zapata,* 180 F.3d at 1241. Any reasonable deputy in Davis's position would have understood that an arrestee does not possess "an essentially free and unconstrained choice" when his options are either (1) consenting to a search or (2) allowing the officers to wait until he leaves and then "smash everything you own," or "tear his place apart," or "f--- your sh-t up." The principle stated in *Zapata* applied with "obvious clarity" to these facts and provided "fair and clear warning" to Davis that his coercive threats were unconstitutional. *Hope v. Pelzer,* 536 U.S. 730 (2002); *Vinyard,* 311 F.3d at 1350.

Based on the foregoing, the Court finds that the allegations in the Amended Complaint set forth a clearly established constitutional violation. Davis is not protected by qualified immunity to suit for his unconstitutional conduct based on the allegations in the Amended Complaint. Davis's motion to dismiss is accordingly denied as to the unlawful search claim in Count III.

### 2. *Unlawful Arrest*

Although Davis appears to argue that he is entitled to qualified immunity as to Plaintiff's

---

[4] A broad principle of law, as it is defined in this context, is one that determines that "'X conduct' is unconstitutional *without tying* that determination to a particularized set of facts." *Vinyard,* 311 F.3d at 1351 (emphasis in original).

8

claim for false arrest in Count III (Dkt. 70 at 2), Davis has included no legal analysis as to this portion of Count III. Davis's only contention is the wholly factual statement that Davis placed Plaintiff under arrest at the direction of his supervisor. (Dkt. 70 at 4). Although this single statement does not appear to constitute an argument on qualified immunity, the Court notes that there is authority -- not cited by Defendant -- for the proposition that an officer who follows the direct orders of a supervisor in effecting an arrest may be entitled to qualified immunity, *under certain circumstances*. See *Vela v. White*, 703 F.2d 147, 152 (5th Cir. 1983) (noting that officer had just arrived on the scene when ordered to effect arrest and finding that "[u]nder the circumstances of this case, it would not be fair to force Salazar to either violate a direct order or else stop and interrogate Byrd"). The Amended Complaint alleges that Davis was "acting at the direction of his supervisors," without any additional factual detail. (*See e.g*, Dkt. 63, ¶¶ 64, 65, 75, 76). Given the factual nature of this inquiry, the dearth of relevant facts in the Amended Complaint, and Defendant's corresponding failure to include *any* legal analysis on this issue, the application of *Vela* and its progeny is not evaluated. Because Defendant has not addressed any relevant allegations in the Amended Complaint or any relevant law as it relates to the false arrest claim, Davis's motion to dismiss is denied as to the unlawful arrest claim in Count III.

### B. *Unlawful Search and False Imprisonment (Count II)*

In Counts I and II, Plaintiff alleges that Defendants Gee in his official capacity, and Defendant Davis, in the alternative, are liable for "unlawful search" and false imprisonment. Davis does not address the substantive legal merit of the tort claims against him, such as whether he had probable cause to arrest Plaintiff, which would operate as a bar to the false arrest claim. *Fernander v. Bonis*, 947 So. 2d 584, 589 (Fla. 4th DCA 2007). Davis instead argues that Fla. Stat. § 30.07

9

shifts liability for his actions to Defendant Gee in his official capacity. (Dkt. 70 at 6).

The statute provides: "Sheriffs may appoint deputies to act under them who shall have the same power as the sheriff appointing them, and for the neglect and default of whom in the execution of their office the sheriff shall be responsible." Fla. Stat. § 30.07. This section is a codification of the common law rule placing on the sheriff liability for acts taken within a deputy's scope of employment. *See McGhee v. Volusia County*, 679 So. 2d 729, 730 (Fla. 1996). In *McGhee*. the Florida Supreme Court clarified that the 1981 amendments to the sovereign immunity statute were consistent with this traditional law defining when an act occurs in the "scope of employment." *Id.* at 733. Accordingly, an agency is immune as a matter of law -- and the officer is liable -- only when: (1) the officer acts outside the scope of his employment, that is, "only if the acts are so extreme as to constitute a clearly unlawful usurpation of authority the deputy does not rightfully possess, or if there is not even a pretense of lawful right in the performance of the acts." *McGhee*, 679 So. 2d at 733 (internal citation omitted); or (2) the officer acts in "bad faith, with malicious purpose, or in a manner exhibiting wanton or wilful disregard of human rights, safety, or property." *McGhee*, 679 So. 2d at 734-35 (Wells, J., specially concurring); *Prieto v. Malgor*, 361 F.3d 1313, 1320 (11th Cir. 2004).

Plaintiffs have pled Counts I and II alternatively. Count I, against Defendant Gee is his official capacity, alleges that Davis acted within the scope of his employment and without bad faith or other improper purpose. (Dkt. 63, ¶¶ 58, 59). Under these allegations, Defendant Gee in his official capacity would be liable for the torts. Count II, against Davis individually, alleges that Davis acted outside the scope of his employment and in bad faith or a manner exhibiting wilful and wanton disregard of human rights, safety, or property. (Dkt. 63, ¶¶ 70, 71). Under these allegations,

Defendant Davis would be liable, individually, for the torts. Counts I and II are a permissible form of alternative pleading. *See* Fed. R. Civ. P. 8(d)(2)-(3); *McGhee*, 679 So. 2d at 733 (observing that "[i]n any given situation either the agency can be held liable under Florida law, or the employee, but not both").

In the instant motion, Davis fails to discuss the actual allegations of the Amended Complaint. The allegations in Paragraphs 70 and 71, alleging that Davis acted "outside the course and scope of [his] employment" and "in bad faith, or in a manner exhibiting a wanton and willful disregard of human rights, safety, or property" are sufficient to allege that Davis acted in a manner to be held individually liable. *See* Fla. Stat. § 768.28(9)(a) (setting forth circumstances under which employee may be personally liable in tort); *see e.g.*, *Pace v. City of Palmetto*, No. 05-c-v1221, 2006 WL 2559513, *4 (M.D. Fla. Sept. 1, 2006) (finding similar allegations sufficient).

Based on the foregoing, the motion to dismiss is denied as to Count II. Because Plaintiff's underlying state law claims remain viable, the motion to dismiss is also denied as to the loss of consortium claim (Count V).

## *Conclusion*

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Reginald Davis's Renewed Motion to Dismiss for Qualified Immunity and Motion to Dismiss based on Fla. Stat. § 30.07 (Dkt. 70) is **DENIED**.

**DONE AND ORDERED** in chambers this __18th__ day of January, 2008.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record